## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ANTWAN CRAY,

      Petitioner,

vs.                           Case No.:    3:13-cv-1246-J-34MCR
                                                      3:10-cr-204-J-34MCR

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Antwan Cray's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion to Vacate)[1] as explained in his supporting memorandum (Doc. 2, Memorandum), and as amended and supplemented (see Doc. 6, First Motion to Amend; Doc. 9, Second Motion to Amend; Doc. 14, Notice of Supplemental Authority). The United States filed responses on May 2, 2014 (Doc. 7, Response), May 13, 2015 (Doc. 11, Second Response), and June 4, 2015 (Doc. 13, Third Response). Cray filed a reply on June 6, 2014. (Doc. 7, Reply). Cray raises essentially two claims of ineffective assistance of counsel, and one claim that his prior convictions for the sale of cocaine should not have counted toward increasing his sentence under the Armed Career Criminal Act ("ACCA").[2]

---

[1]    Citations to the record in the underlying criminal case, United States of America vs. Antwan Cray, 3:10-cr-204-J-34MCR, will be denoted as "Crim. Doc. __." Citations to the civil § 2255 case, Case No. 3:13-cv-1246-J-34MCR, will be denoted as "Doc. __."

[2]    Pursuant to the ACCA, any individual who has three or more prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another… shall be… imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4]  For the reasons set forth below, Cray's Motion to Vacate is due to be denied.

## I.   Background

On July 22, 2010, a grand jury sitting in the Middle District of Florida returned a one-count indictment against Cray, charging him with possession of a firearm and

---

[3]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

[4]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (Crim. Doc. 1,
Indictment).  The Indictment identified five prior convictions:  two for the possession of a
controlled substance, and three for the sale of cocaine.  (Indictment at 1-2).  Because the
Indictment alleged that Cray had three prior convictions for the sale of cocaine, he was
eligible for the 15-year mandatory minimum sentence set forth under 18 U.S.C. § 924(e),
part of the ACCA.

On January 6, 2011, Cray entered into a written "Waiver of Right to Trial by Jury
and Request for Specific Findings of Fact" (Crim. Doc. 32, Waiver) and a written
stipulation (Crim. Doc. 33, Stipulation).  In the Waiver, Cray stated that he understood he
had the right to a trial by jury, and that his public defender had advised him of his rights,
but that he waived the right to a jury trial and requested that the District Judge "make
specific findings of fact as to my guilt or innocence based on the Stipulation of Facts
provided to the Court."  Waiver at 1.  In an accompanying written Stipulation, Cray
conceded that: (1) he was a convicted felon, based on two prior adult convictions for
possession of a controlled substance; (2) he knowingly possessed a firearm, i.e. a Marlin
.22 caliber rifle, as well as several rounds of .22 caliber ammunition; (3) that the
aforementioned weapon and ammunition were indeed a "firearm" and "ammunition" as
defined in Title 18 of the United States Code, and (4) that the aforementioned firearm and
ammunition affected interstate commerce because they were manufactured in another
state or country before Cray possessed them in Florida.  Stipulation at 1-2.  Cray also
acknowledged that there was a factual basis for the stipulations, based on a controlled
purchase of the firearm by a confidential source "which was audio and video recorded."
Id. at 2.  Cray

> acknowledge[d] that by this stipulation he is agreeing to all the facts set forth above and that he is further agreeing that the elements required to establish that he is factually guilty of the offense set forth in Count One of the pending indictment, i.e., possessing a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). [sic]  The defendant also acknowledges that this stipulation will be used against the defendant at trial or at any subsequent proceeding.

Id.; (accord Crim. Doc. 53, Bench Trial Transcript at 21).

The same day, Cray proceeded to a "stipulated facts bench trial."  Cray assured the Court that, after consulting with his attorney, it was his desire to proceed to a bench trial on stipulated facts.  Bench Trial Tr. at 2-3, 10-11.  The Court advised Cray of his due process rights – including the right to a trial by jury, the right to call and confront witnesses, and the right to hold the government to its burden of proof – which Cray stated that he understood.  Id. at 8-10.  Cray maintained that he still wished to proceed to a bench trial on stipulated facts, and that no one had coerced him into doing so.  Id. at 10-11, 12-13.  Cray acknowledged that by entering the stipulations, he was admitting to all the elements necessary to establish his guilt under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm.  Id. at 4, 21-22.  Cray effectively admitted his guilt as to the felon-in-possession charge because he intended to focus on challenging whether he qualified for the ACCA's enhanced mandatory minimum.  See id. at 13-15.  The Court proceeded to review the written stipulations with Cray paragraph by paragraph, each of which Cray admitted.  Id. at 16-21.  Cray thereby admitted that each element of the felon-in-possession charge was satisfied, and that a factual basis for the charge existed.  Cray confirmed one last time that he wished for the Court to adjudicate his guilt or innocence based on the stipulated facts, id. at 22-23, which he had just acknowledged were sufficient to establish his guilt, id. at 21.  The Court found that the government had proven beyond

a reasonable doubt each of the elements of the felon-in-possession charge, and accordingly found Cray guilty. Id. at 23-25.

The Court held a sentencing hearing on September 6, 2011 (see Crim. Doc. 54, Sentencing Transcript I), which was continued to September 8, 2011 (see Crim. Doc. 55, Sentencing Transcript II).   Cray did not dispute that he had three separate prior convictions for the sale of cocaine.  Cray instead argued that two of his prior convictions for the sale of cocaine should not count toward the ACCA enhancement because they were obtained while Cray was a minor.  (See Crim. Doc. 41, Objection to Application of ACCA); Sentencing Tr. I at 5.  Compounding matters, Cray argued, was the fact that the two underage convictions resulted from two charges that were pressed on Cray simultaneously.  See Objection to Application of ACCA at 4-5 ("In short, charges that are piled on juveniles near the age of adulthood place young minds in a precarious position with little recourse but to enter a plea for short term satisfaction without awareness of the lifelong consequences.").  Cray conceded that under the state of the law at the time, he qualified to be sentenced under the ACCA.  Objection to Application of ACCA at 4 ("Defendant Cray recognizes and acknowledges that the state of the law in the Eleventh Circuit… is adverse to his position.").  Nonetheless, he contended that imposing the ACCA's 15-year mandatory minimum based on prior convictions obtained when the defendant was a minor would result in an excessive punishment.  Id. at 4-5; Sentencing Tr. I at 5.  Cray argued that the ACCA, as it was interpreted,

> unduly burdens juveniles who are certified as adults, especially in cases such as this where the juvenile placed two qualifying offenses on one day….
>
> And obviously there are issues that take place at the time of sentencing or pleas for juveniles, and as I indicated, it's our position that when you pile on

charges, on juveniles specifically, that you have what is a systematic coercion of a plea."

Sentencing Tr. I at 5.

The Court noted that circuit precedent bound it to recognize that a prior conviction obtained in adult court must count toward the ACCA enhancement, even if the defendant was a minor when he committed the underlying offense.  Sentencing Tr. II at 5-6; accord United States v. Cray, 488 F. App'x 452, 453-54 (11th Cir. 2012) ("We have written that a prior conviction where the defendant was a juvenile at the time of the offense conduct 'counts towards ACCA enhancement' where the government prosecutes the defendant as an adult.") (citing United States v. Spears, 443 F.3d 1358, 1360–61 (11th Cir. 2006)). As such, the Court overruled Cray's objection to the application of the ACCA.  Sentencing Tr. II at 5-6.  The Court sentenced Cray to the mandatory minimum term of imprisonment of 180 months (15 years), followed by a four-year term of supervised release.  Id. at 20-21.

Cray filed a timely notice of appeal.  (Crim. Doc. 49, Notice of Appeal).  On direct review, Cray sought to challenge circuit precedent permitting the application of the ACCA to defendants whose ACCA predicate convictions were obtained when the defendant was a juvenile.  The Eleventh Circuit declined to revisit circuit precedent, and affirmed Cray's conviction and sentence.  Cray, 488 F. App'x at 454.  Cray did not petition the Supreme Court for a writ of certiorari, and as such, his conviction and sentence became final 90 days later, when the period to petition for certiorari review expired, on November 28, 2012. See Clay v. United States, 537 U.S. 522, 532 (2003).   Cray timely filed the Motion to Vacate less than a year later, on or around October 10, 2013.

## II.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.   Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.   28 U.S.C §2255(a) (2008).   Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.   United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.   United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).   In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.   Weeks, 26 F.3d at 1036.   The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."   Id.   To satisfy the second requirement, that counsel's deficient performance prejudiced the

defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

**A. Ground One:  Whether counsel was ineffective for "coercing" Cray into a stipulated-facts bench trial; Cray's Second Motion to Amend: whether counsel failed to subject the prosecution's case to meaningful adversarial testing**

In Ground One, Cray alleges that counsel gave ineffective assistance because his strategy of having Cray proceed to a stipulated facts bench trial "alowed [sic] the Government to prevail without having to prove the element of thei[r] case in chief to a jury beyond a reasonable doubt."  Motion to Vacate at 4.  Specifically, Cray alleges that counsel coerced him to waive his right to a jury trial and to instead agree to a bench trial with stipulated facts, thereby relieving the United States of having to prove its case to a jury and leaving the Court no alternative but to find Cray guilty.  Motion to Vacate at 4; Memorandum at 2.  In a supplemental pleading, Cray relatedly alleges that by stipulating to his guilt, trial counsel failed to subject the prosecution against him to meaningful

8

adversarial testing.  <u>See</u> Second Motion to Amend at 2-3.  Based on the facts that Cray pled not guilty and proceeded through a bench trial, he submits that he clearly was denying guilt of any kind.  <u>See id.</u> at 3.  Cray also alleges that defense counsel was ineffective for failing to request a writ of certiorari from the United States Supreme Court. <u>See</u> Memorandum at 8.

The record, including the transcript of the stipulated-facts bench trial in particular, refutes Cray's claim that counsel coerced him to waive the right to a jury trial and proceed to a bench trial on stipulated facts.  The record instead shows that Cray agreed to a stipulated-facts bench trial, that he understood what he was doing, and he understood why he was doing it.

To begin with, Cray signed a written waiver of the right to a jury trial in open court after discussing its effect with the Court under oath.  Cray stated that his counsel had advised him of his rights, but that he wished to waive the right to a jury trial, that he wished to proceed to a bench trial on the facts to which he had stipulated, and that nobody had coerced him into doing so.  Waiver at 1.  Accompanying the Waiver was a series of stipulated facts, in which Cray stipulated to each of the elements of being a felon in possession of a firearm.  Stipulation at 1-2.  Cray acknowledged that he was stipulating to all of the elements necessary for the government to prove the charge.  <u>Id.</u> at 2.

During the bench trial, Cray repeatedly assured the Court that he understood he had the right a jury trial, that he freely waived that right, and that it was his own free choice to proceed to a bench trial on the stipulated facts.  The Court began by asking Cray whether it was his desire "to proceed with a bench trial on a stipulated record[.]"  Bench Trial Tr. at 2.  Cray responded that it was.  <u>Id.</u> at 3.  After advising Cray that he was

charged with possession of a firearm by a convicted felon, id. at 3-4, the Court advised Cray as follows:

> THE COURT: If you – if you want to proceed to trial based on the stipulated record, then what essentially you're doing is you're admitting all of the facts that the government would need to prove your guilt beyond a reasonable doubt as to the charge in the indictment.
>
> Do you understand that?
>
> [CRAY]: (Nods head up and down.)
>
> THE COURT: Excuse me?
>
> [CRAY]: Yes, ma'am.

Id. at 4.

The Court next placed Cray under oath, id. at 5, and informed him of various rights, including the right to a trial by jury, the right to call and confront witnesses, and the right to require the government to prove each element of the charge beyond a reasonable doubt. Id. at 8-10. Cray stated that he understood each of those rights. The Court provided Cray a form for waiving a jury trial, and discussed the waiver with him:

> THE COURT: Mr. Cray, I've handed your attorney a waiver of a jury trial, and I think he's probably talked to you about that form already and probably showed you some variation of it.
>
> But can you read that over and make sure you understand it and ask Mr. Grant [Cray's counsel] any questions that you may have?
>
> [CRAY]: Yes, ma'am.
>
> THE COURT: And before you sign that, basically what the document says is that you're waiving or giving up your right to a trial by a jury, and you're asking the Court to determine your guilt or innocence based on the stipulated facts that you're going to enter into with the government.

|                |                                                                                           |
|----------------|-------------------------------------------------------------------------------------------|
|                | Do you understand that?                                                                   |
| [CRAY]:        | Yes, ma'am.                                                                                |
| THE COURT:     | And do you understand that that's an absolute waiver and you can never take it back?       |
| [CRAY]:        | Yes, ma'am.                                                                                |
| THE COURT:     | Have you had enough time to speak with your attorney about this matter, Mr. Cray?          |
| [CRAY]:        | Yes, ma'am.                                                                                |
| THE COURT:     | Is it your own decision to proceed in this manner?                                         |
| [CRAY]:        | Yes, ma'am.                                                                                |
| THE COURT:     | Do you have any questions about the waiver or what it means?                               |
| [CRAY]:        | No, ma'am.                                                                                 |
| THE COURT:     | Okay.  Mr. Cray, has anyone threatened you or forced you or put pressure on you to cause you to waive your right to a jury trial? |
| [CRAY]:        | No, ma'am.                                                                                 |
| THE COURT:     | Have any promises been made to you to cause you to do so?                                  |
| [CRAY]:        | No, ma'am.                                                                                 |

Id. at 10-11.  Cray's counsel and the prosecutor also assured the Court that nobody had given Cray any promises, understandings, or assurances to make him waive the right to a jury trial.  Id. at 11.  Cray then signed the waiver form.  See id. at 11.

Before accepting the waiver, the Court required the government to inform Cray of the penalties, which included a mandatory minimum sentence of 15 years and a

maximum sentence of life in prison if the ACCA enhancement applied.  Id. at 13.  The

Court continued:

| | |
|---|---|
| THE COURT: | And, Mr. Cray, as I understand it, part of the reason that you're proceeding in the manner that you're proceeding is that you intend to challenge whether that mandatory minimum sentence applies. |
| | Is that correct, Mr. Grant? |
| MR. GRANT: | Yes, Your Honor. |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | Okay.  Worst-case scenario, just for the sake of this proceeding, do you understand that if I – that if you proceed with the stipulated bench trial and you're found guilty, that the potential outcome could be that minimum mandatory 15 years and up to life? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | And with that understanding, sir, it's your desire to go ahead and waive the jury trial and proceed with the bench trial on the stipulated record? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | Mr. Grant, is the record clear enough on that, sir? |
| MR. GRANT: | Yes, Your Honor.  The only thing I wanted to just further clarify is I've explained to Mr. Cray that the purpose of today's hearing is to determine whether or not he is guilty of the offense of possession of a firearm by a convicted felon, which is why the stipulation has certain convictions that we're willing to stipulate to, and that the subsequent determination of whether or not the three [ACCA predicate convictions] are appropriate is something the Court will determine at a later date. |
| THE COURT: | That's right, Mr. Cray.  The question of how those convictions count, whether they count as one or more or whether they're counted separately, that will be for me to decide later.  It's really more of a sentencing issue. |

> But just in fairness to you, I want to advise you of the worst case which is if I find that all of those convictions do count, then your plea of – your not plea but your conviction for being a convicted felon in possession of a firearm in this case would result in that minimum mandatory and up to life potential penalty.
>
> You understand that?

[CRAY]:          Yes, ma'am.

Id. at 14-15.  Based on Cray's answers, the Court found that he had "knowingly, intelligently, freely, and voluntarily waived his right to a jury trial and stipulated to proceed with a bench trial on the stipulated record."  Id. at 15.

The Court then proceeded to review the stipulated facts with Cray, paragraph by paragraph.  Id. at 16-21.  Among other things, Cray stipulated that: (1) he was a convicted felon, based on two prior adult convictions for possession of a controlled substance; (2) he knowingly possessed a firearm, i.e. a Marlin .22 caliber rifle, as well as several rounds of .22 caliber ammunition; (3) that the aforementioned weapon and ammunition were indeed a "firearm" and "ammunition" as defined in Title 18 of the United States Code, and (4) that the aforementioned firearm and ammunition affected interstate commerce because they were manufactured in another state or country before Cray possessed them in Florida.  Cray admitted that the basis for the charge was an "audio and video recorded" transaction in which he sold a loaded .22 caliber rifle to a confidential source.  Id. at 17-18.

The Court again notified Cray that by entering this series of stipulations, he was effectively admitting his guilt:

THE COURT:          The final paragraph of this stipulation says that you are acknowledging that by this stipulation you are agreeing

|  | to all of the facts set forth in it and that you are also agreeing that the elements or the things that the government would have to prove to establish that you are actually guilty of the offense, that those have been established. |
|---|---|
|  | Do you understand that? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | And the offense that you're admitting the facts to support a conviction for would be possession of a firearm by a convicted felon. |
|  | Do you understand that? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | And just a few more questions, Mr. Cray. |
|  | Do you understand that by stipulating to all these facts, you're stipulating – you're stipulating to your guilt beyond a reasonable doubt of the charge of possession of a firearm by a convicted felon, right? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | Have you had enough time to speak with your attorney about this decision, sir? |
| [CRAY]: | Yes, ma'am. |
| THE COURT: | And has anybody threatened you or forced you to make this decision? |
| [CRAY]: | No, ma'am. |
| THE COURT: | Have any promises been made to you to cause you to do that? |
| [CRAY]: | No, ma'am. |
| THE COURT: | Have you told the truth to all my questions today, sir? |
| [CRAY]: | Yes, ma'am. |

| THE COURT: | Did anybody tell you to answer my questions in a particular way? |
|---|---|
| [CRAY]: | No, ma'am. |
| THE COURT: | And, Mr. Cray, do you fully understand the rights that you have and that you give up by making this stipulation? |
| [CRAY]: | Yes, ma'am. |

****

| THE COURT: | All right. Mr. Cray, is it your final desire for the Court to adjudicate your guilt or innocence based on the stipulation of facts before the Court, sir? |
|---|---|
| [CRAY]: | Yes, ma'am. |

Id. at 21-23. In light of the colloquy and Cray's stipulations, the Court found that the government had proven each of the elements of the charged offense beyond a reasonable doubt, and thus found Cray guilty of possession of a firearm by a convicted felon. Id. at 23-25.

The record therefore refutes Cray's allegation that counsel "coerced" him into waiving the right to a jury trial and proceeding to a bench trial on stipulated facts. Cray's sworn statements show that he voluntarily waived the right to a jury trial, and that he knowingly and freely stipulated to the elements that would establish his guilt. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).[5] "Solemn declarations in open court carry a strong presumption of verity." Id. at

---

[5] Of course, Cray's stipulated-facts bench trial was not a plea hearing. Like in a plea hearing, however, Cray made statements under oath whereby he admitted to each of the elements necessary to prove his guilt of being a felon in possession of a firearm, and Cray

74.  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. Because Cray made statements under oath at the stipulated-facts bench trial, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam).  Cray has produced only conclusory allegations of coercion, which are insufficient to overcome a record that shows he voluntarily waived the right to a jury trial and knowingly stipulated to his guilt.  Indeed, conclusory allegations of coercion do not warrant so much as an evidentiary hearing in the face of such a record.  See Winthrop-Redin v. United States, 767 F.3d 1210, 1216-17 (11th Cir. 2014) (district court did not abuse its discretion in refusing to hold an evidentiary hearing on a § 2255 petitioner's claim that he was forced to plead guilty, where the record of the plea colloquy showed otherwise, and where the prisoner produced only his own unsubstantiated allegations).  As such, Cray has failed to show that counsel gave ineffective assistance by "coercing" him into a stipulated-facts bench trial.

Nor was counsel's strategy in proceeding to a stipulated-facts bench trial objectively unreasonable.[6]  "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 689-90).  The reasonableness of counsel's strategy depends "critically" on a defendant's own

---

acknowledged that he was effectively admitting that he was guilty of the charge.  Bench Trial Tr. at 21-23.

[6]     Cray refers to the stipulated-facts bench trial as part of counsel's "trial strategy." Motion to Vacate at 4; Memorandum at 6, 7.  As such, there seems to be no dispute that the decision to proceed in such a manner was strategic in nature.

statements or actions.  Id. at 1318-19 (citations omitted).  As such, it is difficult to prove that counsel was ineffective where the defendant agreed to counsel's strategy.  See Tafero v. Wainwright, 796 F.2d 1314, 1320 (11th Cir. 1986) ("In this case, any inquiry into whether this closing argument amounted ineffective assistance is rendered easy because Tafero agreed to this strategy.").

Here, the bench trial record reflects that Cray agreed with, and willingly participated in, counsel's strategy to stipulate to the felon-in-possession charge so as to focus on challenging whether the ACCA applied.  See, e.g., Bench Trial Tr. at 2-4, 10-13, 16-23.  The Supreme Court and the Eleventh Circuit have recognized that conceding guilt can be a reasonable strategy where the defendant intends to focus on other issues, such as sentencing.  See, e.g., Florida v. Nixon, 543 U.S. 175, 190-92 (2004) (holding that it was reasonable for counsel to concede defendant's guilt in capital murder case in order to focus on persuading jury to recommend a life sentence)[7]; Darden v. United States, 708 F.3d 1225, 1230 (11th Cir. 2013) (holding that a concession of guilt as to some charges can be a viable strategy when part of a defense strategy to build credibility with the jury) (citing United States v. Tabares, 951 F.2d 405, 409 (1st Cir. 1991); United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002)).  Moreover, the record suggests that Cray likely would have been convicted of the felon-in-possession charge had he proceeded to trial.  Cray was caught in an audio- and video-recorded transaction selling a loaded rifle to an undercover informant.  See Stipulation at 2; Bench Trial Tr. at 17-18.  Accordingly,

---

[7]     In Nixon, the defendant faced a death sentence, which the Supreme Court suggested influenced its determination that counsel was not ineffective under Cronic in deciding to concede guilt so as to focus on the penalty phase.  See id. at 190 ("[S]uch a concession in a run-of-the-mine trial might present a closer question….").  As Darden and other cases illustrate, however, a partial concession of guilt can also be a reasonable strategy in a non-capital case.

counsel could reasonably have determined that it would be unwise to contest guilt, and that it would be better to focus on contesting whether the ACCA's enhanced mandatory minimum applied to Cray.   As such, the Court does not find that counsel rendered ineffective assistance in advising Cray to proceed to a stipulated-facts bench trial.[8]

Because the Court determines that counsel's performance was not deficient, it need not reach <u>Strickland</u>'s prejudice prong.  <u>Strickland</u>, 466 U.S. at 697.

In a supplemental pleading, Cray argues that counsel, by proceeding to a bench trial on stipulated facts that would compel a finding of guilt, failed to subject the prosecution's case to meaningful adversarial testing, thereby rendering ineffective assistance under <u>United States v. Cronic</u>, 466 U.S. 648 (1984).  Second Motion to Amend at 1-3.  In addition, Cray argues that because he pled not guilty and proceeded to a bench trial, "it is clear that Movant was denying guilt of any kind."  <u>Id.</u> at 3.  This argument is a variation of the <u>Strickland</u> claim discussed above.   For the same reasons discussed earlier, the record of the stipulated-facts bench trial refutes Cray's claim that he was "denying guilt of any kind."  To the contrary, Cray acknowledged that he was stipulating to all of the elements that would establish his guilt.  Bench Trial Tr. at 21-23.  Additionally, counsel did not necessarily render ineffective assistance under <u>Cronic</u> by strategically conceding guilt.  <u>Nixon</u>, 543 U.S. at 190 ("On the record thus far developed, [counsel's] concession of Nixon's guilt does not rank as a '[f]ailure to function in any meaningful sense as the Government's adversary.'") (quoting <u>Cronic</u>, 466 U.S. at 666) (footnote omitted);

---

[8]      The Court observes that while circuit precedent foreclosed Cray's challenge to the use of juvenile convictions as ACCA predicates, <u>United States v. Spears</u>, 443 F.3d 1358, 1360-61 (11th Cir. 2006), there is no suggestion that trial counsel or Cray were unaware of that obstacle.  To the contrary, Cray conceded that then-existing precedent foreclosed his argument.  Objection to Application of ACCA at 4.  Cray's strategy was to preserve the issue for appeal and to persuade the Eleventh Circuit to revisit the topic on direct review.  Sentencing Tr. I at 5.

Darden, 708 F.3d at 1230 ("Darden's contention that Cronic applies anytime defense counsel concedes guilt would force us to ignore – indeed, reject – the obvious benefits of strategically conceding partial guilt."). Counsel strategically stipulated that Cray was guilty of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), while still contesting whether Cray was guilty of being an "armed career criminal" under § 924(e). Such a strategic concession of guilt did not amount to a failure to meaningfully test the prosecution's case.

Finally, in relation to Ground One, Cray alleges that counsel was ineffective for not petitioning the Supreme Court for a writ of certiorari. Memorandum at 8. Cray acknowledges that counsel "did challenge the ongoing validity of the Eleventh Circuit's precedence to [sic] Spears[9] and Cure[10] on Direct Appeal," but he claims that when the Eleventh Circuit ruled against him, counsel should have petitioned the Supreme Court for certiorari review. Failing to petition for a writ of certiorari has not been recognized as a basis for an ineffective assistance claim. Indeed, the Supreme Court has held that the "right to [appellate] counsel is limited to the first appeal as of right…." Evitts v. Lucey, 469 U.S. 387, 394 (1985); see also Ross v. Moffitt, 417 U.S. 600, 617-18 (1974) (the right to due process does not extend to the filing of a petition for a writ of certiorari). Consistent with Evitts, several courts have held that appellate counsel does not render ineffective assistance by failing to advise their clients of how to seek further review beyond the initial direct appeal, such as en banc or certiorari review. See, e.g., United States v. Arechiga–

---

9   Spears, 443 F.3d at 1360-61 (prior conviction in adult court could count toward ACCA enhancement, even if defendant was a juvenile at the time).

10   United States v. Cure, 996 F.2d 1136 (11th Cir. 1993) (same).

Ramirez, 370 F. App'x 784, 785 (9th Cir. 2010) (rejecting § 2255 claim of ineffective assistance of counsel based on failure to advise of right to petition Supreme Court for writ of certiorari); Pena v. United States, 534 F.3d 92, 95–96 (2d Cir. 2008) (rejecting claim of ineffective assistance of counsel based on failure of appellate counsel to notify petitioner of right to file for certiorari); Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008) (rejecting claim of ineffective assistance of counsel based on counsel's alleged failure "to inform petitioner of the procedure and time limits for filing a certiorari petition pro se," holding "[w]e disagree that such violations would create a constitutional right to effective assistance of counsel"); Moore v. Cockrell, 313 F.3d 880, 882 (5th Cir. 2002) (rejecting § 2254 claim of ineffective assistance of counsel based on failure of counsel to timely notify petitioner of the outcome of his direct appeal, which allegedly resulted in petitioner being time-barred from filing a discretionary appeal).  Thus, although counsel might not have petitioned the Supreme Court for a writ of certiorari, Cray has not identified a cognizable constitutional claim based on counsel's failure to do so.  Therefore, Cray is not entitled to relief on the allegations set forth in Ground One or the Second Motion to Amend.

**B. Ground Two:  Whether counsel gave ineffective assistance by not arguing that Cray's juvenile convictions in adult court should not count as ACCA predicates because they were obtained without parental consent**

In Ground Two, Cray claims that counsel gave ineffective assistance because he "failed to argue during sentencing that Petitioner's two prior convictions were unconstitutional because he pled guilty to both offenses as a juvenile without the advice

or consent from either of his parents." Motion to Vacate at 5; see also Memorandum at 10-13.

Two of the prior convictions supporting Cray's ACCA enhancement were for the sale of cocaine, which were obtained in state court when Cray was 17-years old (although he was charged as an adult). See Sentencing Tr. II at 4-5. Cray recognizes that "Counsel did challenge whether serious drug offense[s] committed by minors, being treated as adults should be used to impose sentences under ACCA." Memorandum at 11. Cray alleges, however, that "Counsel failed to argue a critical aspect of the subject. Specifically Counsel failed to argue whether a prior conviction meets the Constitutional standards when a minor please [sic] guilty to state charges as an adult without the consent, or approval from his parents or legal guardian." Id. Cray notes that in Burgett v. Texas, 389 U.S. 109 (1967), the Supreme Court held that a prior conviction cannot be used to enhance a defendant's sentence if it was obtained in violation of the right to counsel, as recognized in Gideon v. Wainwright, 372 U.S. 335 (1963). Burgett, 389 U.S at 115. Cray contends that a conviction obtained through a guilty plea when the defendant was a minor, without the advice or consent of the minor's parents, likewise violates the Constitution, and therefore cannot be used to later enhance a defendant's sentence. Cray contends that counsel rendered ineffective assistance by failing to make that precise argument.

Counsel did not perform deficiently by not arguing, at the federal sentencing hearing, that the lack of parental consent rendered Cray's prior convictions in state court unconstitutional, and therefore ineligible for sentencing enhancement purposes. Cray essentially contends that counsel should have collaterally attacked his prior state court convictions in federal court. The Supreme Court has held, however, that a defendant in

a federal sentencing hearing may not collaterally attack the validity of previous state court convictions that are used to enhance his sentence under the ACCA.  Custis v. United States, 511 U.S. 485, 487 (1994).  The "sole exception" to this prohibition is that a defendant in a federal sentencing hearing may attack the validity of prior convictions that were obtained in violation of the right to counsel.  Id. at 487, 493-96.  Yet the Supreme Court expressly declined "to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in Gideon."  Id. at 496.

Here, Cray's counsel could only have collaterally attacked Cray's prior convictions had they been obtained in violation of the right to counsel.  The record reflects, however, that Cray was counseled by one Tom Nordlie, Esq., in both of the juvenile cases where he was convicted (in adult court) of selling cocaine.  See Response at 17; Sentencing Tr. I at 5; Government's Sentencing Exhibits 4 and 5 (Original Copies of Judgments). Because Cray had been counseled, trial counsel had no other basis on which to collaterally attack the validity of the prior convictions for ACCA purposes.  In turn, because counsel could not have collaterally attacked the prior convictions on the ground that they were obtained without parental consent, trial counsel's performance was neither deficient nor prejudicial.  See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit…."); Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's decision that counsel has no duty to bring forth non-meritorious motions); Ladd v. Jones, 864 F.2d 108, 110 (11th Cir.1989) ("[S]ince these claims were meritless, it was clearly not

ineffective for counsel not to pursue them.").  Accordingly, relief on Ground Two is due to be denied.

### C. Cray's First Motion to Amend (Doc. 6) and Notice of Supplemental Authority (Doc. 14):  Whether Cray's prior convictions for the sale of cocaine fit the ACCA's definition of the term "serious drug offense"

In the First Motion to Amend, which Cray filed before the government filed its response, Cray contends that his prior Florida convictions for the sale of cocaine do not qualify as "serious drug offenses" under the ACCA.[11]  Cray rightly notes that the ACCA defines the term "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii); First Motion to Amend at 2.

Relying on Descamps v. United States, 133 S. Ct. 2276 (2013),[12] Cray contends that Section 893.13(1)(a) of the Florida Statutes, which makes it "unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance," is divisible.   Cray argues that the statute creates different

---

[11]    If a pleading is one to which a responsive pleading is required, a party may amend its pleading once as a matter of course within 21 days of service of the responsive pleading, or within 21 days of service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1)(B).  Because the Court required a response to Cray's Motion to Vacate, and because Cray moved to amend before the government responded, the First Motion to Amend is due to be granted as a matter of course.  The Court therefore will consider the substantive claim raised in the First Motion to Amend, although the substantive claim is due to be denied on the merits.

[12]    In Descamps, the Supreme Court reiterated that a sentencing court can only employ the modified categorical approach to determine the nature of a prior conviction when the statute defining the prior offense is divisible.

maximum sentences for different drug quantities, and that the maximum sentence for distributing less than 28 grams of cocaine is five years in prison, which would not qualify as a "serious drug offense" under the ACCA.  First Motion to Amend at 3-4.  Cray argues that his prior convictions for the sale of cocaine involved less than 28 grams, and therefore they should not have counted as ACCA predicate "serious drug offenses."[13]

The Court can find no support for Cray's assertion that, at least as of 1999 and 2000 when Cray committed the sale of cocaine offenses, Florida Statutes section 893.13(1)(a) imposed a five-year maximum sentence for selling 28 grams or less of cocaine.[14]  Rather, the Eleventh Circuit has explained that a conviction under section 893.13(1)(a) for the sale of cocaine is a "serious drug offense" under the ACCA for the following reasons:

> [Florida Statute § 893.13(1)(a)(1)] makes it a second-degree felony "for any person to sell" cocaine.  Fla. Stat. § 893.13(1)(a)(1). And the maximum sentence for second-degree felonies in Florida is fifteen years. See Fla. Stat. § 775.082(3)(c). The ACCA's definition of "serious drug offense" includes: "an offense under State law, involving ... distributing ... a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). [Defendant's] two Florida convictions fit that definition because: (1) they were state law crimes, (2) selling is a form of distributing, (3) cocaine is a controlled

---

[13]    It appears that Cray procedurally defaulted this claim by failing to argue, either before this Court or on direct appeal, that Florida Statutes section 893.13(1)(a) is divisible, and therefore that his prior cocaine convictions did not necessarily qualify as "serious drug offenses" under the ACCA. However, the Court considers it equally straightforward to address the claim on the merits.

[14]    Cray also cites United States v. Shannon, 631 F.3d 1187 (11th Cir. 2011), for the proposition that the maximum punishment for possession with intent to sell 28 grams or less of cocaine is five years.  First Motion to Amend at 3.  Shannon does not support such a proposition with respect to a conviction under Florida Statutes section 893.13(1)(a).  Shannon concerned a defendant who was previously convicted under a different Florida statute – section 893.135 – which prohibits, among other things, the purchase of cocaine.  Shannon, 631 F.3d at 1189.  In turn, neither the ACCA's definition of "serious drug offense" nor U.S.S.G. § 4B1.1's definition of "controlled substance offense" encompasses the purchase of a controlled substance.  See id. at 1189; 18 U.S.C. § 924(e)(2)(A)(ii).  Cray, however, was convicted under Florida Statutes section 893.13(1)(a) for the sale of cocaine, and as such, Shannon is inapplicable.

substance, and (4) they were punishable by up to fifteen years. So the district court was correct to treat the convictions as ACCA predicates.

United States v. Johnson, 570 F. App'x 852, 856-57 (11th Cir. 2014).

In a "Request for Supplemental Pleading," which the Court construed as a Notice of Supplemental Authority (see Doc. 14, Notice of Supplemental Authority; Doc. 15, Order Construing Request as Notice of Supplemental Authority), Cray added that his prior convictions for the sale of cocaine also should not count as ACCA predicates under Mellouli v. Lynch, 135 S. Ct. 1980 (2015). The gravamen of Cray's argument is that a state law drug offense is only a "serious drug offense" under the ACCA if it involved a "controlled substance" listed in 21 U.S.C. § 802, but because Florida's drug schedules include "at least fifty substances not included in the federal schedules," a conviction under Florida Statutes sections 893.13(1)(a) cannot count as a "serious drug offense." Notice of Supplemental Authority at 3-4.

Cray ignores that cocaine is listed as a controlled substance under both Florida law and the federal Controlled Substances Act. Compare Fla. Stat. § 893.03(2)(a)(4) with 21 U.S.C. § 802(17)(D). Cray further ignores that his state court judgments reflect that he was convicted, on three separate occasions, of selling cocaine, not some other substance. See Sentencing Tr. II at 4-6; Government's Sentencing Exhibits 3B, 4, and 5. Thus, two facts together are fatal to Cray's claim that his prior convictions for the sale of cocaine should not count as ACCA predicates: (1) as a matter of law, a Florida conviction for the sale of cocaine is a "serious drug offense" under the ACCA, United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014); Johnson, 570 F. App'x at 856-57, and (2) as a matter of fact, Cray had three prior convictions under Florida law for the sale

of cocaine.  Therefore, the three prior convictions for the sale of cocaine correctly counted as ACCA predicates.  Relief on this ground is due to be denied.

### III.  Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Cray seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Cray "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1. Petitioner Antwan Cray's First Motion to Amend (Doc. 6) is **GRANTED**.  The Court has considered the substantive claim raised therein on the merits.

2. Petitioner Antwan Cray's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1), as amended and supplemented (Doc. 6, Doc. 9, Doc. 14) is **DENIED**.

3. The Clerk shall enter judgment in favor of the United States and against Antwan Cray, and close the file.

4. If Cray appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of October, 2016.

MARCIA MORALES HOWARD
United States District Judge

Lc 19

Copies:

Pro se petitioner
Counsel of record